HAEBLER et al. v. LUTTGEN.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

1. APPEAL—CASE—CERTIFICATE.
   Where there is no certificate or statement that the case contains all the evidence presented on the trial, an order denying a new trial will not be reviewed.

2. PRINCIPAL AND AGENT—FIDUCIARY RELATION.
   Under a contract whereby one undertakes to act as agent for the sale of cement delivered to him f. o. b. in New York, and agrees to remit to his principal, within a fixed period after each sale, a net price for each barrel, he to receive for his labor all that he obtains above such net price, he is acting in a fiduciary capacity, and must account for all goods sold within the period fixed by the contract.

3. SAME—ACTION—DEMAND.
   If the agent fail to remit the proceeds of sale as required by the contract, the principal may sue for them without prior demand.

4. SAME—CONSTRUCTION OF CONTRACT.
   The agent must pay all expenses and freight charges on goods consigned to him, and remit the agreed net price for each barrel sold by him.

5. SAME.
   After each sale the principal is entitled to receive the remittance within the time limited, though the agent may have received the proceeds in some other form than cash.

6. APPEAL—CONSTRUCTION OF CONTRACT—HARMLESS ERROR.
   Error in the submitting of a contract to the jury is cured by the jury finding the proper construction.

Appeal from court of common pleas, trial term.

Action by Theodore Haebler and Oscar Faehrmann against Maximilian O. Luttgen on a contract of agency. From a judgment in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

L. Laflin Kellogg, for appellant.

R. B. Honeyman, for respondents.

PATTERSON, J. This is an appeal from a judgment rendered upon a verdict of a jury in favor of the plaintiffs in an action tried in the court of common pleas, and from an order denying defendant's motion for a new trial. We are not at liberty to consider

the appeal from the order.  There is no certificate or statement in the case that it contains all the evidence presented on the trial, and in consequence of this defective condition of the record we are remitted to the consideration of such questions only as arise on the appeal from the judgment.  It appears that the plaintiffs, merchants in New York, on the 4th day of June, 1891, entered into a written contract with the defendant, who resided and carried on business at Minneapolis, Minn., by the terms of which the defendant was constituted a selling agent for the plaintiffs of certain German cement of which the plaintiffs were the importers; and he undertook to sell, on conditions to be mentioned, 4,000 barrels during the season, presumably of that year, as a minimum quantity. The price for this cement during the season was to be $2.35 a barrel free on board at New York for cement to be used in a curbing contract referred to,—this price being fixed on the basis of 60 days from the date of delivery in Minneapolis,—or $2.37 a barrel free on board at New York for all other business on a basis of three months from the date of shipment.  The merchandise was to be billed by the plaintiffs to the defendant, and he assumed the distinct obligation of selling the cement as the plaintiffs' agent, and making out his bills to his customers for such cement as such agent; and he also agreed to turn over to the plaintiffs, "as whose agent he sells, bills, and delivers the same," all remittances he received for the cement as soon as he obtained the same.  His compensation was to consist of all he received over and above the fixed prices.  It also appears that the plaintiffs shipped to the defendant something over 4,000 barrels of cement, and they claim that in November and April, 1892, the defendant sold and received payment for 400 barrels, and has not paid the value thereof, at the price fixed by the contract, but has retained and misappropriated the amount received, in violation of his agreement, and in fraud of the plaintiffs. And they further claim that the defendant sold and received payment for an additional hundred barrels in June, 1892.  The answer admits the making of the contract substantially in the terms set forth in the complaint, but avers that it was modified and changed by the consent of the plaintiffs so that the goods were to be sold at a price named by the plaintiffs, and that it was agreed the defendant should receive the usual commission for the sale of cements, all expenses and outlays to be paid by the plaintiffs.  It further avers by way of a counterclaim—presumably arising out of the alleged changed contract—that the defendant, at the express request of the plaintiffs, paid, laid out, and expended a sum of money in connection with the merchandise, exceeding the amount received for the 500 barrels; and also sets up a counterclaim for commissions on the sale of the cement, and judgment is demanded therefor.

It becomes important, in the first instance, to examine the record to ascertain precisely what is the state of the proof respecting the contract between the parties, and such examination fails to disclose that there was any modification of the character set up in the answer made of the contract of June, 1891, and that the allegations of the answer in that respect are without support.  All that

was done was that the plaintiffs authorized the defendant, if it became necessary, to sell at $2.20 or $2.30 net to them; and nothing was said about commissions, or who should pay charges. The relations between the parties stand upon the written contract, and the liability of the defendant must be determined by the construction to be given to that contract. The first point made by the appellant is that the action cannot be maintained in the form in which it was brought, because there is nothing to establish that the defendant acted in a fiduciary capacity or otherwise than as a factor or commission merchant entitled to the possession of the goods, and to dispose of them, and to retain from the proceeds his commissions and advances. But such is not the nature of this contract. Its terms specifically constitute a different relationship, and make the defendant a mere selling agent, with strictly limited power respecting the merchandise and its proceeds; and so careful were the plaintiffs to guard themselves that the nature of this agency is referred to no less than three times in the contract. The proper construction of the agreement is that this merchandise was to be shipped to the defendant free on board at New York at a fixed price to be returned to the plaintiffs by the defendant at $2.35 or $2.37 for each and every barrel of cement sold by the defendant, he to receive for his labor and attention all that he obtained above the before-mentioned prices. This would seem to contemplate the payment by the defendant of all the charges of transportation and storage upon merchandise forwarded to him, because he stipulated that on the conditions of the contract he would sell a minimum quantity of 4,000 barrels, which confessedly he has not done. In view of the terms of the contract and the obligation assumed by the defendant of remitting advances upon receipt of the proceeds of sale to the plaintiffs, it is difficult to perceive how any contention can be made that the defendant was not acting in a fiduciary capacity; and therefore the claim of the defendant that he did not receive the proceeds of the sales in that relation cannot be upheld.

It is further claimed on the part of the appellant that, assuming the moneys were received in a fiduciary capacity, and the action being in form for damages for fraud, a nonsuit should have been granted because of the failure to allege and prove a demand for the payment of moneys. The plaintiffs do not allege a demand. If this were an action for conversion, the beginning of the suit would not be a sufficient demand, and there would be force in this objection. But there is in this case an unconditional promise of an agent to turn over all remittances as soon as received; an obligation, therefore, to return fixed amounts at fixed periods; and a demand of performance is not a prerequisite to a suit. As was said in the important case of Brown v. Arrott, 6 Watts & S. 418:

"Where the owner of the goods or the principal is advised from time to time by his agent of the sales as they are made, and again of the receipt of the moneys as they are paid thereon, and according to the understanding that exists between them, arising either from a special agreement, or a previous course of dealing between them, or the established usage or custom, if there be any, regulating the same, the principal or late owner of the goods is to call on his agent or factor, and receive his money, or to draw upon him for it,

.the latter may retain it until it is demanded; but where the factor or agent is bound, either by the agreement or previous course of dealing between them, or the usage of trade in regard thereto, to forward the money to his principal or employer, it is clearly his duty to do so as he shall receive it, though it may be only a part of what he expects. by the earnest opportunity; and no practice to the contrary will either justify or excuse his retaining it beyond such time, unless the sum shall be so small as not to justify the expense of forwarding it."

It is further claimed on the part of the appellant that the defendant was entitled to retain out of the proceeds of the sale of the cement the advances he made for freight, insurance, and storage, and that, it having been shown that the advances exceeded the amount of proceeds of the cement sold, the verdict should have been for the defendant; or, in other words, he should have recovered on the counterclaim.  This contention proceeds upon a wrong construction of the contract.  As said before, the written instrument of June 4, 1891, is the only contract between the parties, and by the terms of that contract the plaintiffs were scrupulously careful to protect their right to an immediate return to them of the proceeds of sale of all the merchandise at the rates specified in the contract.  There is no question at all involved in that contract of deductions for anything, and no proof of a request that the defendant pay any charges on the shipments.  When the cement was sold, it was the duty of the defendant at once to remit $2.35 or $2.37, as the case might be.  Those figures were not to be diminished by any charges or costs of any kind on any of the 4,000 barrels, but were a net price; and it is not shown that there was any sale of the particular quantities mentioned in the complaint in this action at any other price.  There was nothing ambiguous in the terms of the contract, nor does the correspondence between the parties show any construction put upon that contract, concerning the liability of the defendant, other than is contained in the contract itself.  What the defendant states he may have done is not shown to have been acquiesced in, and the defendant's contention in this respect has no real foundation.  The defendant took the risk of selling 4,000 barrels.  He sold only 500.  He was to pay all charges and return certain prices.  No claim is made that the plaintiffs prevented his selling all he contracted to sell.  He did not perform what he undertook to do, and his outlays are his own loss.  The title to the goods was always in the plaintiffs, although the defendant was entitled to the possession of the same during the season for the purposes of sale.  When the season passed, and no sale had been effected, the defendant's right to sell had ceased, and the plaintiffs had the right to resume possession of the property, and were not bound to reimburse the defendant for expenses incurred in fruitless efforts to sell.

It is also claimed that there was error in allowing a recovery on the 100 barrels of cement disposed of in June, 1892, because the plaintiffs failed to show that the proceeds were actually received. It does appear that the defendant received notes of the purchaser for the 100 barrels referred to.  It may be presumed that those notes were paid at their maturity, nothing to the contrary being

set forth or proven; but, at all events, the plaintiffs were entitled to a remittance of the fixed amounts within 60 or 90 days, no matter in what form the defendant received the proceeds of sale.

Many exceptions were taken at the trial, none of which we find to be of sufficient importance to require special reference to them. If there was error in the admission of testimony of the payment of freight and storage by the plaintiffs upon 3,400 barrels, it was an error which in no way militated against the defendant's rights, because his counterclaim did not repose upon any basis of proven fact; and as to the court leaving to the jury the construction of the contract as to the defendant being liable for freight or storage, while, of course, it was for the court to construe that contract, and not the jury, whether its terms were contained in the instrument of June 4, 1891, or were to be spelled out from correspondence, still, the jury having found the proper construction, there was no occasion for interference with the verdict on that score.

The judgment must be affirmed, with costs.    All concur.